UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:85-CR-00606-1; 2:88-CR-00129-1 | Date | May 27, 2025 |
|---|---|---|---|
| Title | United States v. Juan Ramon Matta-Lopez | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Daniel Torrez | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE MOTION TO REDUCE SENTENCE FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) (85 DKT. 291; 88 DKT. 536)**

**I.    Introduction**

Juan Ramon Matta-Lopez ("Defendant"), who is 79 years old, has been in federal custody for 36 years while serving various sentences, including a life sentence without the possibility of parole. The conduct underlying his convictions occurred between 1981 and 1985. On November 15, 2024, he filed a Motion to Reduce Sentence for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Motion"). 85 Dkt. 291; 88 Dkt. 536. Only a defendant who was convicted of a crime in which the underlying conduct occurred on or after November 1, 1987, may file a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). *United States v. King*, 24 F.4th 1226, 1232 (9th Cir. 2022). Requests for early release made by defendants convicted of crimes where the underlying conduct occurred before November 1, 1987, are considered pursuant to 18 U.S.C. § 4205(g) and a 1994 Bureau of Prisons ("BOP") Policy. *Id.* Through the Motion, Defendant contends that this cut-off date violates his Equal Protection rights under the Fifth Amendment to the U.S. Constitution. Accordingly, he contends that his Motion for Compassionate release should be reviewed and granted by applying the standards set forth in 18 U.S.C. § 3582(c)(1)(A).

On December 31, 2024, the Government filed an opposition to the Motion ("Opposition"). 85 Dkt. 295; 88 Dkt. 541. On January 16, 2025, Defendant filed a reply ("Reply"). 85 Dkt. 298; 88 Dkt. 546.[1] A hearing on the Motion was held on January 23, 2025, and it was taken under submission. 85 Dkt. 303. For the reasons stated in this Order, the Motion is **GRANTED**.

**II.    Background**

    A.    Defendant's Convictions

Defendant is serving life sentences imposed in two cases: (1) Central District of California Case No. 85-CR-00606-PAR: Judgment and Commitment dated January 16, 1990 (the "85 Action"); and (2) Central

---

[1] To streamline the discussion in this Order, subsequent citations are to the docket in 2:85-cr-00606-JAK-1 ("85 Dkt."), unless a different docket is identified.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:85-CR-00606-1; 2:88-CR-00129-1 | Date | May 27, 2025 |
|---|---|---|---|
| Title | United States v. Juan Ramon Matta-Lopez | | |

District of California Case No. 88-CR-00129-WJR: Judgment and Commitment dated March 13, 1991 (the "88 Action"). These convictions were for conspiracy to distribute narcotics, in which Defendant was found to be a supplier of large quantities of cocaine that were illegally imported into the United States.

In the 85 Action, Defendant's conduct occurred in or around 1981, and Defendant was convicted of seven counts: (count 1) conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 846, 841(a)(1); (counts 2 to 5) distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1); (count 6) possession with intent to distribute a narcotic controlled substance in violation of 21 U.S.C. § 841(a)(1); and (count 7) continuing criminal enterprise in violation of 21 U.S.C. § 848. He was sentenced to a non-parole-eligible life sentence for the seventh count, to be served concurrently with five consecutive 15-year sentences. 85 Dkt. 182 at 5.

In the 88 Action, Defendant's conduct occurred between 1983 and 1985, and Defendant was convicted of 11 counts: (count 1) conspiracy to import a controlled substance in violation of 21 U.S.C. § 963; (count 2) conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 846, 841(a)(1)); (counts 3, 6, and 8 to 13) aiding and abetting in the distribution of a controlled substance in violation of 18 U.S.C. § 2; and (count 14) continuing criminal enterprise in violation of 21 U.S.C. § 848. 88 Dkt. 321 at 1. Except as to count 14, Defendant was sentenced to 15 years for each count of which he was convicted. 88 Dkt. 321 at 1–2. As to count 14, Defendant was sentenced to life with parole eligibility after 10 years. *Id.* at 1. The terms of imprisonment in the 88 Action are consecutive to the sentence in the 85 Action, and concurrent to the life sentence for count 14. 88 Dkt. 321 at 2.

      B.      Defendant's Imprisonment and Medical Conditions

Defendant has been in custody since 1988. 85 Dkt. 291 at 11–14. He has spent at least 25 years in almost continuous solitary confinement. *Id.* at 12–13. Defendant's health is deteriorating. *Id.* at 14. Defendant is currently being hospitalized at MFCP Springfield where he is bed-ridden and confined at the highest level of security. *Id.* at 13.

Defendant has a sacral ulcer that appears to have turned into osteomyelitis, a bone infection. 85 Dkt. 291 at 14. He is only comfortable when he is lying flat on his back, and this immobility allegedly led to the infected ulcer, which could progress to bacteremia, sepsis and shock. *Id.* The Springfield medical staff has identified the most effective treatment of this condition as the removal of the lower half of Defendant's body, but they have also determined that he would not survive such an operation. *Id.* The medical staff opined in July 2024 that Defendant "could die within weeks." *Id.* (citing Dkt. 303 at 24 (under seal)). Defendant also suffers from dementia, which the Springfield staff has determined is likely "Alzheimer's type." *Id.*

On August 11 or 12, 2024, Defendant underwent emergency surgery that removed the lower part of his colon, and a colostomy bag was installed. 85 Dkt. 291 at 14. This appears to have been in response to the development of two perforations in Defendant's colon apparently caused by extreme constipation that may have been the result of the pain medications Defendant had been taking. *Id.*

Other health issues identified in Defendant's medical records include congestive heart failure, chronic obstructive pulmonary disease ("COPD"), hypertension, enlarged prostate, a benign brain tumor, and macular degeneration, which appears to have left him blind in his left eye, and for which there is no

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:85-CR-00606-1; 2:88-CR-00129-1 | Date | May 27, 2025 |
|---|---|---|---|
| Title | United States v. Juan Ramon Matta-Lopez | | |

cure. 85 Dkt. 291 at 14–15.

    C.    Legal Framework

        1.    <u>Applicable Law and Bureau of Prison Policy as to Defendant</u>

For defendants who are convicted of crimes where the underlying conduct occurred prior to November 1, 1987 ("old law" defendants), compassionate release is governed by 18 U.S.C. § 4205(g). *See United States v. King*, 24 F.4th 1226, 1232 (9th Cir. 2022). That section provides:

> At any time upon motion of the Bureau of Prisons, the court may reduce any minimum term to the time the defendant has served. The court shall have jurisdiction to act upon the application at any time and no hearing shall be required.

18 U.S.C. § 4205(g).

Under § 4205(g), "a prisoner was not allowed to directly request compassionate release by filing a motion in district court. Only the BOP could seek such relief on behalf of the inmate." *King*, 24 F.4th at 1228–29.

In 1994, a regulation issued that provided that the Bureau of Prisons would not file a motion pursuant to § 4205(g) for any defendant who is serving a sentence of life without parole:

> The Bureau of Prisons cannot initiate [a request under 18 U.S.C.§ 4205(g)] on behalf of federal offenders who committed their offenses prior to November 1, 1987, and received non-parolable sentences.

28 C.F.R. § 571.64; 59 FR 1238-01, 1994 WL 3184 (F.R.).

The result of the application of § 4205(g) and the 1994 BOP Policy is that a defendant whose criminal conduct occurred to prior to November 1, 1987, and who was serving a non-parolable sentence, cannot have a request for compassionate release reviewed by a court. Defendant is within this category.

        2.    <u>New Law</u>

The Sentencing Reform Act of 1984 ("SRA") repealed § 4205(g), effective November 1, 1987. *King*, 24 F.4th at 1229. The SRA provides that, "[f]or inmates whose offenses occurred on or after November 1, 1987 [("new law" defendants)], the applicable statute is 18 U.S.C. § 3582(c)(1)(A)." *United States v. Matta-Ballesteros*, 843 F. App'x 892, 893 (9th Cir. 2021). The SRA also ended parole and replaced it with supervised release. *King*, 24 F.4th at 1231.

Section 3582(c)(1)(A) was amended in 2018 by the First Step Act to allow courts to reduce a term of imprisonment either upon motion of the BOP or a defendant, if the defendant has exhausted the applicable administrative process:

> (c) Modification of an imposed term of imprisonment. – The court may not modify a term of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:85-CR-00606-1; 2:88-CR-00129-1 | Date | May 27, 2025 |
|---|---|---|---|
| Title | United States v. Juan Ramon Matta-Lopez | | |

> imprisonment once it has been imposed except that—
> (1) in any case--
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that- (i) extraordinary and compelling reasons warrant such a reduction; . . .and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c).

In 2020, Defendant filed a motion for compassionate release based on the argument that the provisions in the First Step Act that authorized prisoners to file compassionate release motions applied to "old law" prisoners. 85 Dkt. 248. This motion was denied. 85 Dkt. 264. In 2021, Defendant appealed that Order to the Ninth Circuit. *United States v. Matta-Ballesteros*, 843 Fed. App'x 892 (9th Cir. 2021). The Ninth Circuit rejected Defendant's position on the basis that the language of § 3582(c) made clear that it applied only to defendants whose criminal conduct occurred on or after November 1, 1987. *Id.* at 894. As the Ninth Circuit explained:

> That inmates in Matta's position—serving non-parolable sentences for pre-1987 offenses—are not eligible for compassionate release because the BOP declines to initiate compassionate release for them may be "harsh," but it is not the product of an absurd statutory scheme, and therefore does not empower us to "rewrite the statute that Congress has enacted." *Dodd v. United States*, 545 U.S. 353, 359, (2005).

*Matta-Ballesteros*, 843 F. App'x at 894.

Accordingly, the Ninth Circuit held that compassionate release for Defendant was governed by § 4205(g). *Id.* It then concluded that "[b]ecause the BOP did not initiate [Defendant's] motion for compassionate release, the district court correctly denied it." *Id.*

In a subsequent, published opinion, the Ninth Circuit concluded that § 3582(c)(1)(A) did not apply to "old law" prisoners. *King*, 24 F.4th at 1229. *King* held that, because a prisoner who was convicted of a crime prior to November 1, 1987 is subject to § 4205(g), such a prisoner cannot personally file a motion with a district court for compassionate release. *Id.* (citing *United States v. Jackson*, 991 F.3d 851, 854 (7th Cir. 2021)).

The appellants in *Matta-Ballesteros* and *King* did not raise an equal protection challenge based on the different statutes that applied to prisoners due to the dates of their convictions. Accordingly, that issue was not addressed in either decision.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:85-CR-00606-1; 2:88-CR-00129-1 | Date | May 27, 2025 |
|---|---|---|---|
| Title | United States v. Juan Ramon Matta-Lopez | | |

**III.     Analysis**

Defendant seeks immediate release pursuant to 18 U.S.C. § 3582(c)(1)(A). 85 Dkt. 291 at 1. He contends the disparity of treatment between "old law" and "new law" defendants violates his right to equal protection under the Fifth Amendment. Defendant then contends that, applying the new law to his circumstances, warrants a finding of extraordinary and compelling reasons that support immediate, compassionate release. The Government addresses and contests only the equal protection argument.

      A.     **Defendant's Fifth Amendment Violation Claim**

          1.     Legal Standards

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Supreme Court has recognized that "the Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976) (citing *Bolling v. Sharpe*, 347 U.S. 497 (1954)). The "Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975). "Therefore, cases analyzing claims of state discrimination in violation of the Equal Protection Clause are equally applicable to claims of federal discrimination under the equal protection guarantee of the Fifth Amendment." *United States v. Carrillo-Lopez*, 68 F.4th 1133, 1139 (9th Cir. 2023).

The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Therefore, assessing an equal protection challenge requires a court to "'measure the basic validity of [a] legislative classification.'" *Carrillo-Lopez*, 68 F.4th at 1139 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979)).

The first step is to identify the classification of groups. *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018) (quoting *Country Classic Dairies, Inc. v. Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988)). Once a classified group has been identified, the court should look for a control group. *Id.* (citing *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995)). The control group should be composed of individuals who are similarly situated to those in the classified group in respects that are relevant to the government's challenged policy. *Id.* (citing *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 966 (9th Cir. 2017)). If the two groups are similarly situated, the court then determines the appropriate level of scrutiny and then applies it. *Id.* (citing *Ariz. Dream Act Coal*, 855 F.3d at 969).

          2.     Application

Defendant raises an as-applied challenge to the disparity of treatment between "old law" defendants who are serving a life sentence without parole, and "new law" defendants who are serving a sentence of life imprisonment. 85 Dkt. 291 at 22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:85-CR-00606-1; 2:88-CR-00129-1 | Date | May 27, 2025 |
|---|---|---|---|
| Title | United States v. Juan Ramon Matta-Lopez | | |

      (a)    Similarly Situated

Defendant contends that the First Step Act has adopted a classification that treats two or more similarly situated groups in an unequal manner. 85 Dkt. 291 at 23. Thus, he argues that prisoners serving life sentences without parole based on conduct that occurred before November 1, 1987, are precluded from seeking compassionate release, while prisoners serving life sentences based on the same conduct occurring on or after November 1, 1987, have the opportunity to apply for compassionate release. *Id.* In the Opposition, the Government does not dispute that "old law" defendants serving a life sentence without possibility of parole and "new law" defendants who are serving life sentences for precisely the same criminal conduct are similarly situated.

Accordingly, Defendant has satisfied the first requirement of the equal protection analysis.

      (b)    Rational Basis Review

Defendant does not argue that 18 U.S.C. § 3582(c)(1)(A) employs suspect classifications, nor that 18 U.S.C. § 3582(c)(1)(A) impinges on his fundamental rights. Therefore, he acknowledges that rational basis is the appropriate level of scrutiny for review. 85 Dkt. 291 at 21–22. The Government agrees that rational basis applies. 85 Dkt. 295 at 9.

Rational basis is the correct level of review of Defendant's claim. *See Olson v. California*, 104 F.4th 66, 76 (9th Cir. 2024) (applying rational basis where the challenging party does not allege suspect classifications nor allege that the Equal Protection violation impinges on fundamental rights); *see also McGinnis v. Ryster*, 40 U.S. 263, 270 (1973) (applying rational basis test to prisoners); *Gregory v. Ashcroft*, 501 U.S. 452, 470 (1973) (age is not a suspect classification under the Equal Protection Clause).

      (i)    <u>Legal Standards</u>

Rational basis is "highly deferential." *United States v. Hancock*, 231 F.3d 557, 566 (9th Cir. 2000). "If the classification at issue does not involve fundamental rights or suspect classes, it must be upheld 'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1279 (9th Cir. 2004) (quoting *Heller v. Doe*, 509 U.S. 312, 319–20 (1993)). "The constitutional inquiry is limited to assessing congressional action." *Ledezma-Cosino v. Sessions*, 857 F.3d 1042, 1048 (9th Cir. 2017).

Under rational basis review,

> the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification [citation omitted], the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker [citation omitted], and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational. [citation omitted]

*Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:85-CR-00606-1; 2:88-CR-00129-1 | Date | May 27, 2025 |
|---|---|---|---|
| Title | United States v. Juan Ramon Matta-Lopez | | |

It is not required "'that the government's action actually advance its stated purposes'" but rather a court "'look[s] to see whether the government could have had a legitimate reason for acting as it did.'" *Wright v. Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1141 (9th Cir. 2011) (quoting *Currier v. Potter*, 379 F.3d 716, 732 (9th Cir. 2004)). However, "'[t]he State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational. Furthermore, some objectives—such as a bare desire to harm a politically unpopular group—are not legitimate state interests.'" *In re Levenson*, 587 F.3d 925, 931 (9th Cir. 2009) (quoting *Cleburne* at 446–47). "Where there are 'plausible reasons' for Congress' action, 'our inquiry is at an end.'" *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–14 (1993) (quoting *Vance v. Bradley*, 440 U.S. 93 97 (1979)).

"In defending a statute on rational-basis review, the government 'has no obligation to produce evidence to sustain the rationality of a statutory classification.'" *Kahawaiolaa*, 386 F.3d at 1279–80 (quoting *Heller*, 509 U.S. at 320). Rather, the person challenging the law "bears the burden 'to negate every conceivable basis which might have supported the [legislative] distinction.'" *Ledezma-Cosino v. Sessions*, 857 F.3d 1042, 1048 (9th Cir. 2017) (quoting *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1086 (9th Cir. 2015) (alteration in original)).

    (ii)    <u>Application</u>

Defendant contends that there is no rational relationship between a legitimate government purpose and the disparity of treatment regarding compassionate release between "old law" prisoners who are serving life sentences without parole, and "new law" prisoners who are serving life sentences for the same crimes. 85 Dkt. 291 at 22–29. Specifically, Defendant contends that none of the legitimate government reasons underlying the SRA's cut-off date applies to him. *Id.* Defendant advances two principal arguments in support of this position.

*First*, Defendant contends that the purpose of the cut-off date, *i.e.*, to avoid *ex post facto* concerns, does not provide a rational basis as to the different treatment of him and a "new law" defendant who committed the same offenses. 85 Dkt. 291 at 23–24, 28–29.[2] The original draft of the SRA applied to "all federal sentencing" that occurred on or after its effective date, which was November 1, 1987. *Id.* at 23. As that date approached, Congress and the Department of Justice recognized that the SRA could be deemed an unconstitutional *ex post facto* law with respect to those sentenced, or as to crimes committed, prior to the effective date, in the event that the Sentencing Guidelines called for a harsher sentence. *Id.* Due to these concerns, the draft of the SRA was amended on October 28, 1987, to establish that the SRA applied only to *conduct* -- rather than sentences -- that occurred on or after November 1, 1987. *Id.* at 23–24 (citing 133 Cong. Rec. 29656–57 (1987)). Defendant notes that every subsequent discussion of this amendment justified it solely based on the need to avoid the *ex post facto* concerns. 85 Dkt. 291 at 24.

---

[2] Article I of the United States Constitution prohibits states from passing Ex Post Facto laws. U.S. Const. Art. I, § 9, cl. 3. The Ex Post Facto Clause is "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995) (quoting *Collins v. Youngblood*, 497 U.S. 37, 43 (1990)). To violate the Ex Post Facto Clause, a law altering the definition of a crime or increasing the punishment for a crime first, "'must be retrospective, that is, it must apply to events occurring before its enactment.'" *United States v. Trujillo*, 713 F.3d 1003, 1011 (quoting *Hamilton v. United States*, 67 F.3d 761, 764) (9th Cir. 1995)). Second, the law "'must disadvantage the offender affected by it.'" *Id.* (quoting *Hamilton*, 67 F.3d at 764).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:85-CR-00606-1; 2:88-CR-00129-1 | Date | May 27, 2025 |
|---|---|---|---|
| Title | United States v. Juan Ramon Matta-Lopez | | |

The Government does not dispute that the ex post facto issues led to the November 1, 1987 cut-off date.

The congressional record supports the position that the cut-off date amendment was motivated by *ex post facto* concerns. On November 16, 1987, a letter written by then-Assistant Attorney General John Bolton was read on the House floor. It explained that the SRA's original draft, which applied to sentencing that occurred after November 1, 1987, raised a "constitutional problem." 133 Cong. Rec. 31946 (1987). Bolton stated that application of the Sentencing Guidelines to sentences occurring on November 1, 1987 "would violate the ex post facto clause of the Constitution where the guidelines result in harsher punishment than prior law." *Id.* He added that a case-by-case determination of "when the guidelines would violate the ex post facto clause would lead to much litigation that can and should be avoided." *Id.* Therefore, the SRA was amended to "establish[] a bright-line rule" that the SRA only applied to offenses for which the charged conduct occurred on or after November 1, 1987. *Id.* Congressman Hamilton Fish stated that the amendment "would solve one of the major constitutional questions raised in connection with the guidelines—the ex post facto problem—by amending the 1984 law, so as to make it clear that the new guidelines will apply only to criminal conduct occurring after the guidelines are in effect." 133 Cong. Rec. 31950 (1987). In the Senate, Senators Biden, Thurmond, Kennedy, and Hatch issued a joint explanation, which stated, "As the Senate's section-by-section analysis of [the amendment] indicates, the purpose of Section 2 [the date amendment] is to avoid possible ex post facto problems with current law." 133 Cong. Rec. 33109 (1987).

Defendant's argument is persuasive because as applied to him, 18 U.S.C. § 3582(c) does not increase any punishment for him.

*Second*, Defendant contends that another justification for the cut-off date was the availability of parole to "old law" defendants. He argues that this rationale also does not apply to him. 85 Dkt. 291 at 29. This argument is persuasive. *King* concluded that the cut-off date was rational due to the availability of early release via parole for "old law" defendants:

> There is a rational reason for this cut-off date. Unlike new law inmates, old law prisoners can still secure early release through the parole system. While the SRA replaced parole with supervised release, this regime change is not retroactive and parole remains available to inmates who committed crimes on or before October 31, 1987. *See Jackson*, 991 F.3d at 852–53. That old law inmates have early release avenues beyond compassionate release substantially undercuts [the defendant]'s position that application of § 4205(g) to pre-November 1, 1987, offenders is absurd such that the plain language of the statutory scheme that prescribes compassionate release procedures should not control. *See Dodd v. United States*, 545 U.S. 353, 359 (2005); *Schroeder*, 793 F.3d at 1083.

24 F.4th at 1231.

As noted, Defendant was sentenced to life without the possibility of parole. Consequently, he does not benefit from the rational basis reason for the cut-off date recognized in *King*. Accordingly, Defendant's arguments are persuasive that there is no rational basis for the "old law" and "new law" distinction as applied to him because he may not seek parole.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:85-CR-00606-1; 2:88-CR-00129-1 | Date | May 27, 2025 |
|---|---|---|---|
| Title | United States v. Juan Ramon Matta-Lopez | | |

The Government neither disputes that this is disparate treatment, nor offers a rational basis for it. Nor does the Government contest these arguments by Defendant. Instead, the Government argues that Defendant raises a facial, not an as-applied, challenge to § 3582(c). 85 Dkt. 295 at 11. It contends that "Defendant suggests that there are facts peculiar to his own case, but does not state what they are." *Id.* However, Defendant states that § 3582(c) is unconstitutional as applied to him because of the facts particular to his case: He is not eligible for parole, and his sentence cannot be reduced.

The Government next argues that the Ninth Circuit has already held that § 4205(g) and the BOP policy, which together deny compassionate release review for Defendant, meet the rational basis standard. 85 Dkt. 295 at 11–12 (citing *United States v. Matta-Ballesteros*, 843 Fed. App'x 892 (9th Cir. 2021)). However, in addressing the issues raised on Defendant's prior appeal, the Ninth Circuit did not apply a rational basis review because no Equal Protection challenge was before it, which the Government acknowledges. *See id.* ("The Ninth Circuit has already conducted that analysis, *though not in the equal protection framework*.") (emphasis added). Rather than conduct an Equal Protection analysis in Defendant's prior appeal (which did not raise the issue), the Ninth Circuit interpreted § 4205(g), the BOP Policy, and the SRA and First Step Act to determine whether the *text* of First Step Act could be construed as applying to defendants who were convicted of conduct that occurred before November 1, 1987. In concluding that the First Step Act did not apply to pre-November 1, 1987 defendants, the Ninth Circuit determined that the "clear" text of the Sentencing Reform Act's cut-off date could only be "rewritten" if it was "absurd." *Matta-Ballesteros*, 843 F. App'x at 894; *see also King*, 24 F.4th at 1232 (holding that the cut-off date is neither ambiguous nor absurd, as a matter of statutory interpretation).

Concluding that a statutory scheme is not "absurd" in connection with statutory interpretation, is not necessarily a determination that the statute satisfies the standards for a rational basis review under the Equal Protection Clause.

Further, the Government argues that Defendant's citations to Congressional intent are not substantively different from the positions that he advanced in his past unsuccessful appeal. 85 Dkt. 295 at 13. Although not found persuasive in the prior appeal, congressional intent is appropriately considered as part of the Equal Protection inquiry. *See Ledezma-Cosino v. Sessions*, 857 F.3d 1042, 1048 (9th Cir. 2017) (quoting *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1086 (9th Cir. 2015) (internal quotation marks omitted) (The one challenging the law bears the burden "to negate every conceivable basis which might have supported the [legislative] distinction.") (emphasis in original).

\*         \*         \*

A defendant who was sentenced to life imprisonment without parole for a crime that occurred before November 1, 1987, is precluded from filing a motion for compassionate release pursuant to 18 U.S.C. § 3582. A defendant who was sentenced to life imprisonment for the same crime that occurred on or after November 1, 1987, is not precluded from doing so. There is no rational basis between this disparity of treatment. *Kahawaiolaa*, 386 F.3d at 1279. The cut-off date in the SRA as applied to Defendant violates his Fifth Amendment right to equal protection of the laws. Accordingly, the Motion pursuant to § 3582 may be considered on the merits.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:85-CR-00606-1; 2:88-CR-00129-1 | Date | May 27, 2025 |
|---|---|---|---|
| Title | United States v. Juan Ramon Matta-Lopez | | |

      B.      Compassionate Release

           1.      <u>Legal Standards</u>

The First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194, was enacted in 2018. This statute amended the procedures through which a defendant may seek a reduction of a sentence based on a request for "compassionate release." The procedures that apply to such requests are addressed at 18 U.S.C. § 3582(c)(1)(A):

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction; or (the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);. and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

A request for compassionate release or reduction in sentence requires a three-step process.

*First*, the defendant must either "exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or wait until "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." *Id.* The "administrative exhaustion requirement imposes a mandatory claim-processing rule that must be enforced when properly invoked" by the government. *United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021).

*Second*, if the administrative remedies have been exhausted, a district court evaluates whether "extraordinary and compelling reasons warrant such a reduction" and that such a reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §§ 3582(c)(1)(A)(i), 3582(c)(1)(A)(ii). Alternatively, a court may consider whether

> the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:85-CR-00606-1; 2:88-CR-00129-1 | Date | May 27, 2025 |
|---|---|---|---|
| Title | United States v. Juan Ramon Matta-Lopez | | |

18 U.S.C. § 3582(c)(1)(A)(ii).

*Third*, a district court "consider[s] the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

The defendant bears the burden of "establish[ing] his eligibility for compassionate release." *United States v. Wright*, 46 F.4th 938, 951 (9th Cir. 2022).

      2.    Application

Through the Motion, Defendant contends that he qualifies for compassionate release pursuant to 18 U.S.C. § 3582(c). 85 Dkt. 291 at 29–35. In the Opposition, the Government does not address the merits of Defendant's compassionate release request. At the January 23, 2025, hearing, the Government stated that it does not contest the merits of Defendant's compassionate release request.

      (a)    Exhaustion of Administrative Remedies

      (i)    Legal Standard

A court may modify a term of imprisonment upon a motion of the defendant after the defendant has "fully exhausted all administrative rights to appeal of the Bureau of Prisons" or 30 days have elapsed since the "warden of the defendant's facility" received the request for a compassionate release, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). As noted, administrative exhaustion is a mandatory claim-processing rule for compassionate release motions and must be enforced when properly raised by the government. *Keller*, 2 F.4th at 1282. A court may stay the implementation of an order until the 30-day period for administrative review is satisfied. *See United States v. Krashna*, 465 F. Supp. 3d 988, 991 (N.D. Cal. 2020) (staying an order deciding a compassionate release motion until the exhaustion requirement is satisfied).

      (ii)    Application

On September 24, 2024, Defendant filed a request for compassionate release with the warden at MFCP Springfield. 85 Dkt. 291 at 15 (citing 85 Dkt. 301) (sealed). Defendant has not yet received a response from the warden. *Id.* Accordingly, the exhaustion requirement is satisfied.

      (b)    18 U.S.C. § 3582(c)(1)(A)(i) Requirements

      (i)    Legal Standards

The FSA does not expressly define "extraordinary and compelling reasons." Instead, that issue was left to the Sentencing Commission through the promulgation of policy statements as to "what should be considered extraordinary and compelling reasons for sentence reduction." *United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021) (quoting 28 U.S.C. § 994(t)). *Aruda* noted that the statements of the Sentencing Commission in U.S.S.G. § 1B1.13 only referred to motions filed by a Director of the Bureau of Prisons, and not ones filed by a defendant pursuant to § 3582(c)(1)(A), as amended. *Id.* Accordingly, *Aruda* held that "the Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:85-CR-00606-1; 2:88-CR-00129-1 | Date | May 27, 2025 |
|---|---|---|---|
| Title | United States v. Juan Ramon Matta-Lopez | | |

court's discretion" but "are not binding" to § 3582(c)(1)(A) motions made by defendants. *Id.* at 802.

On November 1, 2023, the Sentencing Commission amended U.S.S.G. § 1B1.13 to include motions by a defendant. *See* U.S.S.G. § 1B1.13(a) ("Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to § 3582(c)(1)(A) . . ."). In considering this amendment, some district courts have determined that "U.S.S.G. § 1B1.13 is an applicable policy statement for defendant-filed § 3582(c)(1)(A) motions and thus is binding on district courts considering such motions." *United States v. Ramirez-Suarez*, No. 16-cr-00124-BLF-4, 2024 WL 1485859, at *4 (N.D. Cal. Apr. 5, 2024); *accord United States v. Rodriguez*, No. 17-cr-00215-GPC, 2024 WL 1268156, at *2 (S.D. Cal. Mar. 25, 2024); *United States v. Brugnara*, No. CR 14-00306 WHA, 2024 WL 332867, at *2 (N.D. Cal. Jan. 28, 2024). Other district courts have determined that the amended U.S.S.G. § 1B1.13 is non-binding. *See United States v. Merancio*, No. 1:19-cr-00220-JLT-SKO-1, 2024 WL 946007, at *2 (E.D. Cal. Mar. 5, 2024); *United States v. Woods*, No. 21-cr-00478-JST-1, 2024 WL 251399, at *1 (N.D. Cal. Jan. 23, 2024).

Because U.S.S.G. § 1B1.13 has been amended to include motions brought by a defendant, it is determined that the policy statements in § 1B1.13 are binding in connection with the consideration of the Motion. Under U.S.S.G. § 1B1.13, the following issues are to be considered in determining whether there are extraordinary and compelling reasons that warrant the reduction of a sentence: (i) "Medical Circumstances of the Defendant," (ii) "Age of the Defendant," (iii) "Family Circumstances of the Defendant," (iv) "Victim of Abuse," (v) "Other Reasons," and (vi) "Unusually Long Sentence."

(ii)     <u>Application</u>

Defendant contends that there are extraordinary and compelling circumstances that warrant compassionate release. 85 Dkt. 291 at 29–32.

Defendant argues that his terminal illness qualifies as an extraordinary and compelling reason warranting a reduction in sentence under U.S.S.G. § 1B1.13(b)(1)(A). 85 Dkt. 291 at 30. Defendant's terminal illness is a bone infection that could "at any point . . . progress to bacteremia, sepsis, and shock." 85 Dkt. 291 at 30 (quoting Dkt. 301 at 24 (sealed)). The only treatment for this condition is to amputation the lower half of Defendant's body, which doctors have stated "he would not survive." 85 Dkt. 301 at 24 (sealed).

Defendant contends that his other medical conditions, which are significantly debilitating, also qualify as extraordinary and compelling reasons warranting a reduction in sentence under U.S.S.G. § 1B1.13(1)(B). 85 Dkt. 291 at 30. Defendant spends most of his time in bed and has a 20-year history of lower back pain. *Id.* (citing Dkt. 301 at 24 (sealed)). Defendant contends that it is difficult for him to sit up; he is only comfortable lying flat on his back and he cannot even change positions in bed. *Id.* at 31. Defendant has a sacral ulcer, whose infection developed into a life-threatening bone condition for which there is no cure. *Id.* In addition, recent medical records show that on August 11 or 12, 2024, Defendant underwent emergency surgery that removed the lower part of his colon and installed a colostomy bag. *Id.*   This was required due to the development of two perforations in Defendant's colon brought on by extreme constipation likely due to the need for Defendant to take pain medications continuously. *Id.* This condition will now reduce Defendant's ability to perform self-care. *Id.*

There are other health issues identified in Defendant's medical records. They include: congestive heart

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:85-CR-00606-1; 2:88-CR-00129-1 | Date | May 27, 2025 |
|---|---|---|---|
| Title | United States v. Juan Ramon Matta-Lopez | | |

failure; chronic obstructive pulmonary disease; hypertension; enlarged prostate which has led in the past to chronic urinary tract infections and sepsis; a benign brain tumor; dementia, which appears to be stages of Alzheimer's Disease; macular degeneration, which appears to have left him blind in his left eye and for which there is no cure; one full knee replacement with another likely if he is ever in a condition to walk. *Id.* Due to the dementia, Defendant experiences hallucinations and is only periodically lucid. *Id.*

In addition to his terminal illness and deteriorated health condition, Defendant is 79 years old, and has served over 36 years in federal custody.

Based on a review of Defendant's age, time already spent incarcerated, and debilitating and terminal health condition, there are extraordinary and compelling reasons that warrant compassionate release. A sentence reduction is consistent with the applicable policy statements issued by the Sentencing Commission, as articulated in U.S.S.G. § 1B1.13.

(c)  § 3553 Factors

(i)  Legal Standards

Having determined that Defendant has satisfied Section 3582(c)'s exhaustion requirement and that there are "extraordinary and compelling" reasons for a sentence reduction, "the Court must next consider the factors set forth in section 3553(a) to the extent they are applicable[.]" *United States v. Parker*, 461 F. Supp. 3d 966, 981 (C.D. Cal. 2020) (quotation omitted). These factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the kinds of sentence and the sentencing range established in the Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (citing 18 U.S.C. § 3553(a)(1)–(7)).

(ii)  Application

Defendant contends that the application of the § 3553 factors warrant the sentence reduction. 85 Dkt. 291 at 32–35. Each factor is addressed in turn.

(1)  Nature and Circumstances of the Offense and History and Characteristics of the Defendant

The first of the § 3553(a) factors considers "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" 18 U.S.C. § 3553(a)(1). This section also considers an inmate's character, physical and mental condition, family ties, employment, financial resources, community ties, past conduct, criminal history, and drug and alcohol abuse. Considers. *United States v. Parker*, 461 F. Supp. 3d 966, 983 (C.D. Cal. 2020) (citation omitted). Courts have determined that this factor may favor sentence reduction where an inmate "has numerous family ties, including family members who will provide for him." *Id.* (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:85-CR-00606-1; 2:88-CR-00129-1 | Date | May 27, 2025 |
|---|---|---|---|
| Title | United States v. Juan Ramon Matta-Lopez | | |

The nature and circumstances of Defendant's underlying offenses are extremely serious. They led to great harm to victims. They weigh against release. No information as to Defendant's character since the time of his prior sentencing has been presented to warrant a positive finding at this time. That also weighs against release. Defendant's physical and mental conditions are extremely poor. They reflect that he is at a high risk of continued declines in his health, as well as death. They are so serious that they outweigh the other elements of this factor. Therefore, this factor weighs in favor of release.

(2)     Need for the Sentence Imposed

Section 3553(a)(2) considers the need for the sentence imposed

> to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to product the public from further rimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)–(D).

Defendant has already served approximately 36 years in custody, which "has consumed a large part of his life and by any measure represents a very substantial punishment that reflects the seriousness of his offenses and the need for general or specific deterrence" and "is also a period of time that promotes respect for the law and provides just punishment for his offenses." *Parker*, 461 F. Supp. 3d at 983 (quotation omitted). This constitutes just punishment. It also provided general deterrence to the public. As to the need to protect the public, the original sentence did so, and at this time, given Defendant's rapidly declining health and terminal illness, he does not present a risk to the public. Therefore, this factor weighs in favor of release.

(3)     Remaining Factors

The remaining pertinent section 3553(a) factors include "the kinds of sentences available," "the kinds of sentence and the sentencing range established," "any pertinent policy statement" issued by the Sentencing Commission, and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been guilty of similar conduct[.]" 18 U.S.C. § 3553(a)(3)–(6).

The matters previously discussed, including the 36-year term of confinement and Defendant's health issues, show that these remaining factors also weigh in favor of release.

*          *          *

Considered collectively, the § 3553 factors support the requested sentence reduction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:85-CR-00606-1; 2:88-CR-00129-1 | Date | May 27, 2025 |
|---|---|---|---|
| Title | United States v. Juan Ramon Matta-Lopez | | |

**IV.    Conclusion**

For the reasons stated in this Order, the Motion is **GRANTED**. Accordingly, it is **ORDERED** that Defendant is resentenced to time served as to all counts, and that Defendant shall be released forthwith.

**IT IS SO ORDERED.**

                                                                                                    :
                                                        Initials of Preparer        DT